IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PENG WANG, QINLIN LI, and YISI WANG,<br><br>*Plaintiffs*,<br><br>v.<br><br>KEN PAXTON, Attorney General of Texas, in his Official Capacity, only.<br><br>*Defendant*. | Case No. 4:25-cv-3103 |

## PROVISIONAL MOTION FOR CLASS CERTIFICATION

The putative class and subclass seek a declaration declaring Texas SB 17, Texas's everything-old-is-new-again return to the Alien Land Laws of the late 19th and early 20th centuries is unlawful, and an injunction prohibiting its enforcement. *See* Motion for PI.[1]

I. **Statement of the case.**

SB 17 prohibits Chinese citizens, agents, and members of the Chinese communist party from purchasing or leasing land in Texas, subject to certain exceptions. Tex. Prop. Code

---

[1] Although not directly applicable in this District, this Motion is guided by the structure required for Class Certifications under Appendix A of the local rules for the Western District of Texas.

1

§§ 5.253, 5.253(4). Under Texas's discriminatory new law, people who are not U.S. citizens or permanent residents, and whose "domicile" is in China, will be prohibited from renting property in Texas for more than a year. They also will be prohibited from purchasing a second property, whether it is for vacation or investment. The law will apply equally to those from other countries handpicked by the Governor, starting with Iran, Russia, and North Korea.

The putative class and subclass seek a declaration that SB 17 is preempted by both CFIUS/ FIRRMA and the Federal Housing Act, and an unconstitutional violation of the guarantee of Equal protection, and an injunction prohibiting its enforcement against any member of the putative class or subclass.

## II. Statements Defining Class to be Certified.

The named plaintiffs seek to represent a class of all people and entities who are covered by the law, that is, all citizens, members of ruling political parties, and agents of China, Iran, Russia, and North Korea (plus or minus, over time, any country added or removed from the list of designated countries), who are not United States citizens or lawful permanent residents, as well as all company or organization majority-owned or under the control of a person covered by the law, headquartered in a covered country, or "directly or indirectly controlled" by a covered government.

All named plaintiffs further seek to represent the "Chinese subclass." This is the subclass of all individuals and entities under the purported primary class who are covered because they are Chinese.

Finally, all named plaintiffs seek to represent the "lawfully present non-permanent residents" subclass. This is the subclass of individuals who are covered by the law because they

are citizens of a designated country and are not United States citizens or lawful permanent residents (and therefore not domiciled in the United States).

### III. Plaintiffs' grievances.

Plaintiffs' grievances are that SB 17 unlawfully prohibits them from purchasing any real property (except for a homestead as defined by Texas's Property Code) or lease any property for one year or longer.

### IV. The proposed classes may be maintained under Rule 23(b)(2).

The proposed class in this case is ideal for certification under Rule 23(b)(2) because Texas has acted "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirement of a generally applicable set of actions "ensures that the class's interests are related in a manner that makes aggregate litigation appropriate . . . and therefore efficient." *Id.* Thus, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

Civil rights class actions seeking injunctive and declaratory relief are "prime examples" of the types of actions that Rule 23(b)(2) is meant to capture. *Dukes*, 564 U.S. at 361. Rule 23(b)(2) classes seek "an indivisible injunction benefitting all its members at once," individualized inquiries into "whether class issues predominate" are unnecessary, and "[p]redominance and superiority are self-evident." *Dukes*, 564 U.S. at 362–63 (emphasizing the importance of classwide relief based on the structure of Rule 23(b)(2) and noting the Rule's historical basis in civil rights cases). Indeed, "the very nature" of facial civil rights challenges to unconstitutional statutes "makes it appropriate for certification" under Rule 23(b)(2). *Akron*

*Ctr. for Reprod. Health v. Rosen*, 110 F.R.D. 576, 581 (N.D. Ohio 1986); *see also Fla. Immigrant Coal. v. Uthmeier*, --- F. Supp. 3d ----, 2025 WL 1423357, at *15 (S.D. Fla. Apr. 29, 2025).

The classes are exactly the kind of classes that Rule 23(b)(2) is meant to embrace. The classes' interests are sufficiently related to warrant aggregate litigation. Texas has acted on grounds that apply generally to the class and each of its subclasses. Indeed, the classes are defined precisely by how SB 17 treats the class members. *See Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) ("[Rule] 23(b)(2) requires common behavior by the defendant towards the class."). Furthermore, it is far more efficient for this Court to grant declaratory relief protecting all of the class members than to extend that relief piecemeal through individual suits. *See Trump v. CASA*, 605 U.S. ---, 2025 WL 1773631, at *19 (Kavanaugh, J., concurring). Accordingly, the Court should certify the class under Rule 23(b)(2).

## V. This action satisfied Rule 23(a).

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must show that:

(1)  the class is so numerous that joinder of all members is impracticable;

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the named parties are typical of the claims, or

(4)  the named parties will fairly and adequately protect the interest of the class.

The Fifth Circuit instructs that courts entertaining class actions to vindicate civil rights should not apply rules about the burden of proof "rigidly or blindly." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Jones v. Diamond*, 519 F.2d 1090,

4

1099 (5th Cir. 1975)). While the Court must perform a "rigorous analysis" to determine whether to certify a class, *Dukes*, 564 U.S. at 351, the Court may not require the Plaintiff to establish their claims at the class certification stage. *See Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). At the certification stage, the Plaintiff only needs to provide evidence to demonstrate that Rule 23 is satisfied, not a "dress rehearsal for the merits." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).

### A. Joinder of all class members is impractical.

The proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class or subclass members required for a finding of numerosity. Instead, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman*, 651 F.2d at 1038 (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each Plaintiffs' claim." *Id.* Courts also consider "judicial economy arising from the avoidance of a multiplicity of actions." *Id.* Finally, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) (citing *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974)).

The Fifth Circuit holds that "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)."

*Jones*, 519 F.2d at 1100. Joinder is presumptively impracticable when a class consists of forty members or more. *Mullen v. Treasure Chest Casino*, LLC, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Newberg on Class Actions*).

There are over 600,000 H-1B visas in the United States, with an additional 550,000 dependents.[2] Approximately 12% of those are Chinese, with another 0.3% Iran, and 0.2% Russian.[3] In total, there are approximately 140,000 to 150,000 H1B workers and family members covered by the law in the United States, the vast majority of them Chinese. While it is unclear how many of those people live in Texas, it is estimated that more than 10% of all H-1B visa workers live in the Dallas area alone.[4] This would mean well over 10,000 Chinese H-1B visa workers and family members living in Texas.

In addition, according to a recent study, there are over 280,000 Chinese international students studying in the United States, plus over 12,000 from Iran.[5] And Texas hosts about

---

[2] USCIS, H-*1B Authorized-to-Work Population Estimate* (as of September 30, 2019), available at https://www.uscis.gov/sites/default/files/document/reports/USCIS%20H-1B%20Authorized%20to%20Work%20Report.pdf; Fwd.com. *The H-1B Visa Program Policy Brief* (Jan. 27, 2025), available at https://www.fwd.us/news/h1b-visa-program/.

[3] USCIS *H-1B Petitions by Gender and Country of Birth Fiscal Year 2019,* available at https://www.uscis.gov/sites/default/files/document/data/h-1b-petitions-by-gender-country-of-birth-fy2019.pdf.

[4] Lalit K. Jha, *East Coast, Texas employ highest number of H-1B workers: report*, mint.com (Mar. 30, 2018), available at https://www.livemint.com/Politics/xuYwXlZ5ACC4j7jJtO4V5K/East-Coast-Texas-employ-highest-number-of-H1B-workers-rep.html

[5] Veera Korhonen, *Number of international students studying in the Uited States in 2023-24, by country of origin*, Statistica (Mar. 3 2025), available at https://www.statista.com/statistics/233880/international-students-in-the-us-by-country-of-origin/ (China includes Hong Kong).

8% of all international students.[6] Overall, it appears there are at least 40,000 individuals covered by the law in Texas—the vast majority of them Chinese.

The class is also constantly in flux. By definition, the law only applies to people who are not lawful permanent residents of the United States. As time goes by, many will leave the United States, and many more will enter, including Texas. These types of classes are well-suited for certification under Rule 23. *See Pederson*, 213 F.3d at 868 n.11; *see also Jones*, 519 F.2d at 1100 (reminding that even a small class can satisfy numerosity where "the Plaintiffs is seeking injunctive relief on behalf of future class members as well as past and present members"); *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (discussing impracticability of oinder of unknown persons); *Cole v. Livingston*, No. 14-CV-1698, 2016 WL 3258345, at *6 (S.D. Tex. June 14, 2016) (finding numerosity met when there was "a constant flux of inmates into and out of the [prison], so joinder of all of the proposed class members would be impracticable if not impossible").

B.     **Claims by the class and the subclass will generate common answers.**

If SB 17 is preempted by CFIUS/FIRRMA, it is almost certainly preempted in its entirety. *See generally* Motion for PI. Even if it is only preempted as to individuals (and their companies) covered by the law due to their legal domiciliary in the United States (as opposed to being here unlawfully, or being an agent or member of a ruling political party of a designated state, the law would be unlawful as to the entirety of the "lawfully present non-permanent residents" subclass. Meanwhile, if the law violates the Equal Protection Clause or is preempted by the FHA, it will still be unlawful, depending on the reasoning, either to the

---

[6] Veera Korhonen, *U.S. states hosting the most international students in the academic year 2022/23*, Statistica (Jul 5, 2024), available at https://www.statista.com/statistics/237703/us-states-hosting-the-most-international-students/.

entire class, or to the Chinese subclass. Either way, the question of the law's legality will be answered on a classwide basis.

As a result, the claims asserted on behalf of the proposed class include common questions of law and fact that satisfy Rule 23(a)(2). Commonality requires that the class members' claims "depend on a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810. Commonality also requires these common questions "to generate common answers apt to drive the resolution of the litigation." Dukes, 564 U.S. at 349 (emphasis omitted) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009). These "common answers" may be answers about the "defendant's injurious conduct." *Deepwater Horizon*, 739 F.3d at 811. Traditionally, the Rule asks whether the disputed questions are capable of class-wide proof or resolution, and claims need not be identical to satisfy this requirement. *See Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) ("Even a single common question of law or fact can suffice.") (citing *Dukes*, 564 U.S. at 359); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000) (observing that Rule 23(a)'s commonality and typicality requirements do not demand all putative class members share identical claims); *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (noting that "neither [commonality nor typicality] mandates that all putative class members share identical claims").

As mentioned here, the law rises or falls based on the class definitions, all of which are directly derived from how SB 17 itself treats classes of individuals. All class members have

"suffered the same injury, even [if] the resulting injurious effects—the damages—are diverse." *See Deepwater Horizon*, 739 F.3d at 810–11. For each claim, there is effectively a "single common question" for the class or subclass. *See Dukes*, 564 U.S. at 359.

Because common questions of fact and law pervade this case, certification is appropriate.

### C.     The named Plaintiffs' claims are typical of the proposed class.

The Plaintiffs in this case have claims typical of the proposed class. "[T]he test for typicality is not demanding," *Mullen*, 186 F.3d at 625, and "does not require a complete identity of claims." *James v. Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds in In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012) (citing 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.24[4] (3d ed. 2000). In In analyzing typicality, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James*, 254 F.3d at 571 (citing *Moore's Federal Practice*, supra, § 23.24[4]).

Here, the named Plaintiffs' claims are the same as any member of the class. Each named Plaintiff would like to purchase (other than a homestead) or lease (for a year or longer) property. Each are prohibited from doing so by the clear directives of SB 17. And each are arguing that the law is unlawful on its face, or as applied to them as a member of the defined class, rather than because of any particular fact that might distinguish them from other class members.

### D. The named Plaintiffs are competent and dedicated class representatives.

The named Plaintiffs also fulfill the final requirement under Rule 23(a): they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts assessing adequacy consider the representatives' willingness and ability to take an active role in the litigation and protect the interests of other class members and the alignment of interests between the representatives and other class members. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). Representatives "need not be legal scholars" to meet their obligations under Rule 23(a)(4), and "are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with" complex litigation. Feder, 429 F.3d at 132 n.4. See *also Stoffels v. SBC Commc'ns, Inc.*, 238 F.R.D. 446, 455 (W.D. Tex. 2006) (("[T]he Fifth Circuit recognizes that 'certainly, class representatives need not be legal scholars, and are entitled to rely on counsel.'") (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 483 (5th Cir. 2001)). A class representative is s adequate when she has "familiarity with the complaint and the concept of a class action." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982).

The named Plaintiffs are willing and able to fulfill their obligations as class representatives and have the support of counsel with significant experience in litigating complex civil rights actions like this one. They have agreed to act as a representative for the class and met with the undersigned counsel and discussed the responsibility of prosecuting a class action on behalf of people covered by the law, whether because they are Chinese or because they are from one of the other three countries covered by SB 17. The named Plaintiffs can demonstrate familiarity with the allegations in this action, the concept of a class action, and the relief

sought in this action. The named Plaintiffs are prepared to respond to reasonable discovery requests in this case. Finally, the named Plaintiffs are dedicated to fulfilling the role and duties of a class representative protecting class members' fundamental constitutional rights. *See generally* Y. Wang Decl. ¶¶ 16-20; P. Wang Decl. ¶¶ 17-21; Li Decl. ¶¶ 18-23.

Plaintiffs' counsel further states:

### i. There are no known conflicts.

The named Plaintiffs share the class's interests and suffer the same injuries as other prospective class members. There are no known conflicts or potential conflicts between the named Plaintiffs' interests and the interests of the class members. The interests of each named Plaintiff and class members are aligned: all people seek relief from SB 17. No member of the class somehow benefits from SB 17.

### ii. There is no need for any further subclasses.

Given the unlikely possibility that the law is constitutional as to some classification of individuals (e.g., those from Russia, who are not a racial minority, or as to undocumented people, who may have lesser rights to own land in the United States, or as to members of the Chinese Communist Party or agents of China, who may be targeted because of their chosen affiliations rather than their race or national origin), Plaintiffs have included two subclasses, i.e., the Chinese subclass and the lawfully-present subclass. Plaintiffs' counsel does not believe this claim will require any further subclasses now or in the future.

### iii. Plaintiffs' counsel has sufficient prior experience.

Finally, as also relevant to the Fifth Circuit's determination of the named Plaintiff's competency and class counsel's adequacy under 23(g), Plaintiff's counsel are both competent and zealous. *See Slade*, 856 F.3d at 412 (assessing counsel's "zeal and competence" in

11

deciding whether Plaintiffs satisfied Fed. R. Civ. P. 23 (a)(4)). The Court must consider factors including: 1) "the work counsel has done in identifying or investigating potential claims in this action;" 2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" 3) "counsel's knowledge of the applicable law;" and 4) "the resources that counsel will commit to representing the class." Rule 23(g)(1)(A). The undersigned counsel satisfy these criteria:

Justin Sadowsky, lead counsel for Plaintiffs, has 20 years of legal experience, and has been exclusively a civil rights lawyer for over 6 years. *See generally* Sadowsky Declaration and Exhibit A. As his attached CV shows, he has litigated dozens of civil rights cases during that time, with a variety of issues of important and complicated constitutional and federal statutory questions *Id.* Although he has limited class action experience—he has litigated one case on behalf of class plaintiffs, *Cherry v. City of Baltimore,* Civ. Act. No. NJG-10-1447 (D. Md.) (later filed and litigated in Maryland state court), involving whether the City of Baltimore's pension reforms violated the contractual rights of active and retired police and firefighters, Sadowsky Decl. ¶ 3—he will be supported by Keliang (Clay) Zhu and Andre Bates who do have active class action experience. *See generally* Sadowsky Decl. and Ex. A.

Mr. Zhu has 25 years of legal experience, over 15 years of which have been spent working on general and complex civil matters. This includes several class action cases such as *Peng et al v. Mastroianni et al,* Case No. 9:20-cv-80102 (S.D. Fla. 2020), *Becker v. Volvo*, Case No. 3:25-cv-05331 (N.D. Cal. 2025); and *Kong v. Mastroianni et al.*, Case No. 9:25-cv-80121 (S.D. Fla. 2025). He has also litigated several high profile civil rights and other pro bono cases as the founder of the Chinese American Legal Defense Alliance. *See generally* Zhu Declaration.

Mr. Bates has more than 25 years of legal experience in complex litigation matters in state and federal courts, including mass torts and class action lawsuits. That includes acting as class counsel in the *Peng* case as well as *Jones v. Hertz Local Edition, et al.*, Case No. BC587664 (Los Angeles Super. Ct.), and *Effirama Quayson v. DFS Group L.P.*, Case No. 19STCV32729 (Los Angeles Super. Ct.).

And, as a dedicated civil rights lawyer, who is part of an independently-funded non-profit dedicated to protecting the rights of Chinese-Americans and Chinese people in America, Mr. Sadowsky will have sufficient resources that he can commit to representing the class. Moreover, because this case turns on the straightforward legal meaning of plain statutory language, this case should involve little, if any, discovery, and will likely be resolved by a motion for preliminary injunction and/or cross-motions for summary judgment.

### VI. Plaintiffs know of no other pending actions against Texas alleging the same or similar causes of action.

Plaintiffs know of no pending actions against Texas alleging the same or similar causes of action.

### VII. Class counsel has thoroughly explained the nature of a class action and the relative merits of class versus individual actions.

Clay Zhu has thoroughly explained to the named Plaintiffs the nature of a class action and the relative merits of pursuing an individual claim for prospective relief versus a classwide claim for prospective relief. The named Plaintiffs bring this case with the understanding that they are serving as volunteers not only to vindicate their own rights, but to vindicate the rights of all people covered by the law. *See* Zhu Declaration ¶ Y. Wang Decl. ¶¶ 16-20; P. Wang Decl. ¶¶ 17-21; Li Decl. ¶¶ 18-22. The named Plaintiffs are making informed and wiling choices to undertake the duties of class representatives. *Id.*

13

**VIII. Plaintiffs do not propose requiring notice because he seeks only prospective relief under Rule 23(b)(2).**

Plaintiffs' counsel do not propose requiring notice of certification. For cohesive classes certified under Rule 23(b)(2), class participation is mandatory, and thus notice of certification serves little function and is generally not required. *See* Fed. R. Civ. P. 23(c)(2)(A) and 2003 advisory committee notes; *Garcia-Rubiera v. Fortuno*, 727 F.3d 102, 109 n.6 (1st Cir. 2013); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019) There are no such exceptional circumstances here. The cost of notice would outweigh any benefit.

**IX. Settlement with the Named Plaintiffs on an individual basis is unlikely.**

Other than perhaps to play a game of whack-a-mole for the very purpose of avoiding a class action lawsuit, Texas has little incentive to offer declaratory relief to the named Plaintiffs on an individual basis. The law is what the law is, and the Attorney General has not disavowed enforcement.

**X. Other matters Plaintiffs deem necessary and proper to expedition of a decision on the motion and speedy resolution of the case on the merits**

Plaintiffs' counsel knows of no such matters. Plaintiffs seek a decision on its preliminary injunction by September 1, the date SB 17 goes into effect.

July 3, 2025

Respectfully submitted,

s/ Justin Sadowsky
Justin Sadowsky (SDTex 3713277, VA Bar 73382)
*Attorney in charge*
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154 (no fax number)
justins@caldausa.org

Keliang (Clay) Zhu* (CA Bar No 178170)
Andre Y. Bates* (CA Bar No 305509)
CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702 (no fax number)
czhu@dehengsv.com
aybates@dehengsv.com

*Motion for admission pro hac vice forthcoming