IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENG WANG, QINLIN LI, and YISI WANG | § § | |
| *Plaintiffs*, | § | CIVIL ACTION NO.4:25-cv-3103 |
| v. | § | |
| KEN PAXTON, Attorney General Texas, in his Official Capacity, only. | § § § | |
| *Defendant*. | § | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED**

Defendant, Ken Paxton, in his official capacity as Attorney General of the State of Texas, respectfully requests that the Court dismiss the claims brought against him by Plaintiffs, Peng Wang, Qinlin Li, and Yisi Wang (Plaintiffs). Plaintiffs are not adversely impacted by the law complained of and the law is not preempted by Federal law. In addition, there is no basis for an equal protection claim under the Fourteenth Amendment. The Court should therefore dismiss all claims against Defendant pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### NATURE AND STAGE OF PROCEEDING

Plaintiffs in this case challenge a Texas law that protects Texas and its residents by restricting the totalitarian governments of certain designated countries—China, Russia, Iran, and North Korea—from purchasing land in Texas. *See* Tex. S.B.17, 89th Leg., R.S. (2025); *see* App. 1. To prevent circumvention of the restriction, SB 17 also prohibits land purchases by people domiciled in those nations, excluding U.S. citizens and lawful permanent residents of the U.S. (LPRs).

1

**STATEMENT OF FACTS NECESSARY FOR RESOLUTION**

Plaintiffs challenge SB 17 as preempted by federal law and a violation of their rights to equal protection contained in the Fourteenth Amendment. However, SB 17 is well within the state's traditional sovereign authority to regulate the acquisition of its own land, and the state has done so in clear terms not based on race or national origin. SB 17 mitigates the influence of hostile foreign governments. The statute draws lines on that basis, not based on race or national origin. Nothing the federal government has done—including through the limited regulatory authority and scarce resources afforded to the Committee on Foreign Investment in the United States (CFIUS)—precludes Texas from exercising core sovereign authority over its own land.

**STATEMENT OF ISSUES**

A. Whether dismissal is proper for lack of jurisdiction.

B. Whether dismissal is proper under Rule 12(b)(6) for failure to state a claim of preemption.

C. Whether SB 17 violates the right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1983.

**STANDARD OF REVIEW**

"The district court must dismiss the action if it finds that it lacks subject matter jurisdiction." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Sebelius*, 635 F.3d at 762.

A count should be dismissed when it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint, the main

objective is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a claim to be plausible on its face, the plaintiff must sufficiently plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, plaintiff's legal conclusions need not be accepted as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

## ARGUMENT

### A. Dismissal is proper for lack of jurisdiction

This case has three individual plaintiffs (there is a stray reference on page nine of the complaint to a Texas-based real estate company, but there is no further information given regarding it). None of the three plaintiffs are governed by the provisions of SB 17. There is no actual case of controversy between these plaintiffs and SB 17, and therefore dismissal is proper for a lack of jurisdiction.

Contrary to plaintiffs' repeated assertion, the law does define <u>domiciled</u>. New subchapter H of the Texas Property Code begins with definitions in section 5.251. "Domiciled means having established a place as an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." Tex. Prop. Code § 2.251(4). There is nothing in this definition that refers to the length of a visa's term.

3

The Texas Election Code Section 1.015 contains similar language when defining residency for purposes of voting and candidacy. "Residence means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence." Tex. Elect. Code § 1.015. As you might expect, there are many cases interpreting this provision of the election code to determine whether voters and candidates are residents of a particular place. *Mills v. Bartlett, 377 S.W.2d 636 (Tex. 1964)*. There is also Texas Secretary of State opinion GSC-1. "Evidence of intent to establish domicile may include, but is not limited to, such factors as where a person "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996)." GSC-1 at 6.

Because of the similarity in language and the fact that in SB 17 the Texas legislature mirrored the long existent and much interpreted language of the election code, it is reasonable to believe that they intended to incorporate that interpretive history into this chapter of the property code.

Under SB 17 the place of domicile is a central fact that must be established in to determine whether any particular individual is prohibited from entering into a real estate transaction. Tex. Prop. Code § 5.253(4). In addition to government and corporate actors, when it comes to individuals, those persons domiciled within a designated country (China, Russia, Iran and North Korea) are prohibited from real estate transactions in Texas. *Id.* In addition, SB 17 prohibits citizens of a designated country domiciled in a third country or illegally living within the U.S. to buy or lease property.

All three plaintiffs in this case agree that they are living in Texas legally. Two are here with student visas and one is here on a H1B visa. As shown below, all three state in their declarations that they plan to remain in Texas and that it is their permanent home. The prohibition in SB17 against real estate transactions does not apply to them and they have no standing to bring these claims.

Peng Wang has lived in the U.S. for 16 years and is pursuing a Master of Divinity with an F1 student visa. Declaration of Peng Wang. He intends to work as a local worship pastor when he graduates. Declaration of Peng Wang. Fort Worth is unquestionably his domicile. It is the place where he lives and the place to which he intends to return when he is absent. He is an instrumentalist in several local orchestras and he leads Sunday worship at a local church. He declares unequivocally that it is his intention to remain in Fort Worth to finish his degree and seek employment opportunities thereafter.

Qinlin Li is also lawfully present with a F1 student visa. Declaration of Qinlin Li. She has graduated with a masters degree from Texas A&M and is currently living and working in Austin, Texas. She anticipates receiving an H1B visa in October to allow her to continue living and working in Austin. She is working as a water/wastewater plant designer helping Texas tackle its water shortage. She says that she is passionate about her work and the contributions she has made to make Texas a better place. Like Peng Wang she clearly indicates her intention to continue living in Texas including her desire to have more than one residence within the state in the future.

Finally, Yisi Wang is lawfully present with an H1B visa. Declaration of Yisi Wang. She has lived in the U.S. for 16 years and 7 years in Texas. She owns her residence in Sugarland Texas. She has applied for a green card in order to become a lawful permanent resident of the U.S.. Later in the declaration, she indicates her intention to make Texas her

home and thus has made community connections, paid taxes and contributed to the local economy.

The definition of "domiciled" in SB 17 contains objective components ("established a place" as a person's home) as well as subjective components (intent to return when absent) when defining domicile. Section 5.251(4). All three plaintiffs have lawful objective physical presence in Texas and all three state their subjective intention to remain in Texas in the future. The duration of Plaintiffs' visas has nothing to do with domicile. Their objective attachments to the state and their subjective intention to remain mean that none of them are prohibited or limited in any way by the terms of SB 17.

Courts cannot adjudicate hypothetical cases. *Transunion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs must have an actual concrete injury for them to have standing and for the court to have jurisdiction. *Id*. at 424. These plaintiffs do not have an injury, do not have standing and the court doesn't have jurisdiction. Dismissal under Rule 12(b)(1) is proper.

    **B. Dismissal is proper under Rule 12(b)(6) for failure to state a claim for Preemption**

Plaintiffs allege that the U.S. Constitution and federal law preempt the regulatory scheme of SB 17. Const. Art. VI. Para. 2. Their preemption argument is in three parts. First that Texas is usurping the federal government's role in foreign affairs, foreign investment and national security and second that SB 17 is preempted by the statutory regime for the Committee on Foreign Investment in the U.S. Foreign Investment Risk Review Modernization Act of 2018 (FIRRMA) and third that SB 17 is preempted by the Fair Housing Act (FHA). 50 U.S.C. 4565, 42 U.S.C. 3601 *et seq*.

Preemption comes in three recognized flavors: express preemption, field preemption and conflict preemption. *Shen v. Simpson*, 687 F.Supp.3d 1219, 1246–47 (N.D. Fla 2023).

6

Express preemption is when Congress in the statute itself expresses that state regulation in that area is preempted by the federal law. *Id*. Field preemption occurs when the federal statutory scheme is so comprehensive and complete that it completely covers the field and any state regulation is superfluous or duplicative. *Id*. Finally, conflict preemption occurs when a state statute and a federal statute are in conflict with one another and it is impossible to comply with both. *Id*. Plaintiffs allege that SB 17 violates both field and specific conflict preemption. However, they fail to demonstrate that field preemption applies and they do not cite an instance where SB 17 actually clashes with anything in Federal law.

There is no field or conflict preemption between the federal government's role in foreign affairs and SB 17 for the simple reason that Texas is not playing any foreign affairs role with this bill. SB 17 was expressly passed in order to secure Texas and its residents from the security threats posed by the governments of China, Russia, Iran, and North Korea. See SB 17 section 1. Texas is not seeking any changes in any policies of these countries.

The Supreme Court has long blessed state restrictions on alien land ownership. *See, e.g.*, *Terrace v. Thompson*, 263 U.S. 197, 219–22 (1923). This regulation is well within Texas' recognized police power. "The quality and allegiance of those who own, occupy and use the farm lands within its borders are matters of highest importance and affect the safety and power of the state itself." *Id* at 221.

Likewise, the FIRRMA statutory scheme is not so comprehensive that it occupies the entire field of foreign investment. 50 U.S.C. § 4565. It is primarily related to national defense and it specifically excludes single family dwellings from its purview. 50 U.S.C. § 4565(a)(4)(C). Neither FIRRMA nor SB 17 have as a goal any foreign policy objective. Both statutes can be given effect without any conflict between them. As stated previously, Texas is exercising its police power to insure the domestic security of its residents.

CFIUS is the mechanism that FIRRMA uses to review certain transactions including corporate mergers and acquisitions as well as non single family real estate transactions as long as the real estate being purchased is in "close proximity" to national defense infrastructure of some type. See 50 U.S.C. § 4565(a)(4)(B)(ii)(bb)(AA). FIRRMA makes no attempt to regulate all real property purchases in the U.S. that may be purchased by the government of a designated country or its agents.

For this reason, there is no field preemption of SB 17 by FIRRMA.

In addition, there is no specific conflict between SB 17 and FIRRMA that would make impossible to comply with both laws. Plaintiffs in their complaint spend several pages reviewing the history of CFIUS culminating in FIRRMA, but nowhere in those pages do they point out any provision of the federal law that SB 17 would supersede or displace. At most, plaintiffs allege that similar concerns about national security motivated both Congress and the Texas legislature. This does not mean the laws conflict in any way and in fact, they do not.

For this reason, there is no conflict preemption of SB 17 by FIRRMA.

Likewise, Plaintiffs' claim that SB 17 is preempted by the FHA fails for two reasons. The FHA does not give Plaintiffs a cause of action to challenge preempted state laws. And even if it did, their claims fail on the merits because Plaintiffs fail to demonstrate discriminatory treatment.

The FHA gives an "aggrieved person" the right to sue only for "an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The express provisions of this cause of action foreclose any implied right of action for equal protection under the FHA, under 42 U.S.C. § 1983, or in equity. *See Armstrong*, 575 U.S. at 328; *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005); *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021)

(en banc). Plaintiffs thus attempt to shoehorn their claim into Section 3613(a)(1)(A) by alleging that SB 17 itself is a "discriminatory housing practice." But as shown in Plaintiffs' complaint, the FHA spells out specifically the discriminatory housing practices that may be the basis for a cause of action. A generally applicable facially nondiscriminatory law is not one of those bases.

As the district court in Florida considering a similar law recently found, the anti-discrimination provision in the FHA "does not include alienage or citizenship as protected characteristics." *Shen*, 687 F.Supp.3d at 1243. That refutes Plaintiffs' insistence that alienage or domicile discrimination is somehow the same as national-origin or race discrimination under the FHA. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) (holding that Title VII proscribes discrimination based on race and national origin, but not based on citizenship or alienage).

Plaintiffs have failed to demonstrate facial or intentional discrimination based on race or national origin under the FHA for essentially the same reasons they failed to establish an equal-protection claim. *See below*. There is no conflict between SB 17 and the FHA and the FHA does not preempt SB 17.

### C. Equal Protection

Plaintiffs allege that SB 17 violates their right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1983. However, SB 17 is neutral on its face. It classifies based on domicile and alienage, not race or national origin. The bill prohibits purchases by persons who are part of the government, the ruling political party or agents for same. Lawful permanent residents (LPR) from China, North Korea, Russia, and Iran are welcome to purchase real estate in Texas. Tex. Prop. Code § 2.252(1). In addition, persons from these countries domiciled in the U.S. such as the plaintiffs in this case are welcome to purchase or lease real property in the state. Tex. Prop. Code § 2.253(4).

Texas' restrictions on real property transactions in SB 17 are a non-discriminatory and rational means of protecting its soil.

As stated previously, the U.S. Supreme Court has long upheld restrictions on the purchase of land by aliens, *see, e.g.*, *Terrace*, 263 U.S. at 219–22; *Porterfield v. Webb*, 263 U.S. 225, 232–33 (1923); *Webb v. O'Brien*, 263 U.S. 313, 324–26 (1923); *Frick v. Webb*, 263 U.S. 326, 332–34 (1923), ruling that these restrictions are part of the police power reserved to the state when the Constitution was adopted. State restriction on land purchases by some aliens do not violate equal protection so long as they are not 'arbitrary or unreasonable. *Id* at 218, The Court has also dismissed as "frivolous" the contention that a "state statute forbidding the ownership of real property by aliens was repugnant to the Fourteenth Amendment." *Toop v. Ulysses Land Co.*, 237 U.S. 580, 582–83 (1915).

The original meaning of the Fourteenth Amendment and the modern "political function" doctrine also support the district court's conclusion. At the time of the ratification of the Fourteenth Amendment, state restrictions on alien land ownership were ubiquitous. *See Terrace*, 263 U.S. at 217.

Alternatively, "the State's broad power to define its political community" likewise justifies alien land restrictions under the "sovereign" or "political function" doctrine. *Cabell v. Chavez-Salido*, 454 U.S. 432, 438–40 (1982). That doctrine recognizes that the Equal Protection Clause does not "obliterate all the distinctions between citizens and aliens," because that would "depreciate the historic value of citizenship," which has long been tied to the ability to hold land. *Id.* at 439.

Texas has a long recognized right and power to pass laws such as SB 17. There is no evidence that Texas acted arbitrarily or capriciously in designating four countries as security threats and taking steps to prevent the governments of those countries from purchasing or

leasing real property within the state. Texas has a rational basis for these restrictions as set out in Section 1 of SB 17 and there is no violation of Plaintiffs' right to equal protection of the laws.

## CONCLUSION

Accordingly, the Court should dismiss Plaintiffs' Complaint and this action in its entirety and grant any other relief to which Defendants are entitled.

Date: July 30, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
SDTX No. 196534
Keith.Ingram@oag.texas.gov

STEVEN LOOMIS
Special Counsel
Texas State Bar No. 00793177
SDTX No. 3326947
Steven.Loomis@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 463-2100

COUNSEL FOR DEFENDANT

### CERTIFICATE OF COMPLIANCE

  This motion complies with the Local Rules and Court Procedures of the Honorable Charles R. Eskridge III because it contains 3,105 words, and has been prepared in a proportionally double-spaced typeface (13-point Equity) using Microsoft Word (the same program used to calculate the word count).

*/s/ Keith Ingram*
Brian Keith Ingram
Special Counsel

### CERTIFICATE OF SERVICE

  Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on July 30, 2025, a true and correct copy of the above and foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

| | |
|---|---|
| Justin Sadowsky<br>SDTX 3713277<br>VA Bar 73382<br>CHINESE AMERICAN LEGAL DEFENSE ALLIANCE<br>4250 N. Fairfax Drive #600<br>Arlington, VA 22203<br>646-785-9154 (no fax number)<br>justins@caldausa.org | Keliang (Clay) Zhu<br>CA Bar No 178170<br>Andre Y. Bates<br>CA Bar No 305509<br>CHINESE AMERICAN LEGAL DEFENSE ALLIANCE<br>7901 Stoneridge Drive #208<br>Pleasanton, CA 94588<br>925-399-6702 (no fax number)<br>czhu@dehengsv.com<br>aybates@dehengsv.com |

*/s/ Keith Ingram*
Brian Keith Ingram
Special Counsel
