IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PENG WANG and QINLIN LI, *Plaintiffs*, v. KEN PAXTON, Attorney General of Texas, in his Official Capacity, only. *Defendant*. | Case No. 4:25-cv-3103 |

**CONSOLIDATED REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PROVISIONAL MOTION FOR CLASS CERTIFICATION**

Other than pointing vaguely to cases like *Shen v. Simpson*, 687 F.Supp.3d 1219 (N.D. Fla 2023), and *Terrace v. Thompson*, 263 U.S. 197, 219–22 (1923), which were already addressed in detail in Plaintiffs' Motion for a Preliminary Injunction, the Attorney General barely deigns to defend SB 17. Instead, he relies mostly on the argument that Plaintiffs are not covered by SB 17 because they are domiciled in Texas, and therefore lack standing.

But, the Plaintiffs in this action are on J-1 visas, which make them ineligible to be domiciled in Texas under Texas law. And while Li will have her visa changed to an H-1B visa in a few months, such alteration of status will simply not end the risk of enforcement against her in light of the nonimmigrant nature of the H-1B visa, her lack of a significant

1

history of employment in Texas, and her personal ambivalence of remaining in Texas in light of discriminatory laws like SB 17.

The Attorney General is right, though, about one thing. Plaintiffs "are no threat to the security of Texas or Texans." Cert. Opp. (Dkt. 19) at 4. Yet SB 17 nevertheless threatens them with criminal prosecution for the mere act of trying to rent or own property in Texas. It stands in contrary to the federal scheme regulating non-U.S. citizens from purchasing land for security purposes, as well as the guarantees of the Fair Housing Act that protect against national origin discrimination. And it violates the Equal Protection Clause.

## I. As F-1 visa holders, Wang and Li cannot be domicile themselves in Texas.

The Attorney General claims that Plaintiffs are domiciled in Texas and are thus not covered by the law. *See* Motion to Dismiss (Dkt.17) at 3-6; *see also* PI Opposition (Dkt. 18) at 2 (incorporating Motion to Dismiss). The Attorney General cites to the general law of domicile requiring a place to be "an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." MTD at 3. Of course, the question posed by the Attorney General's standing argument is whether plaintiffs can have a "permanent residence" in the United States that they will always "intend[] to return" to when they are on a temporary visa, or whether—factually or by operation of law—they "intend to return" to China at the expiration of their visa.

### A. Nonimmigrant visa holders must have an intent to return to their country under federal law.

Both remaining plaintiffs are on F-1 visas, Wang Decl. ¶ 6, Li Decl. ¶ 6 although Qinlin Li will transfer to an H-1B visa sometime in October.[1] Both visas are defined as nonimmigrant

---

[1] Yisi Wang has voluntarily dismissed herself from this lawsuit.

2

visas, that is, visas in which the individual does not intend to immigrate to the United States. *See also Kiyaroudi v. Rubio,* 2025 WL 1434380, at *1 (W.D. Wash. May 19, 2025) ("they are nonimmigrant visas, meaning the applicant must affirmatively show that they have no intent to establish permanent residency in the United States and will depart the end of their visa term").

In order to be eligible for an F-1 visa, individuals like Wang must "intend[], and will be able, to depart upon termination of student status." 22 C.F.R. § 41.61(b)(1)(iv). Although no specific comparable language exists in the Code of Federal Regulations for H-1B visas, that is not because H-1B visas are granted to those who intend to remain in the United States permanently. Instead, "an alien who seeks admission with a properly issued H-1B nonimmigrant visa is not presumed to be an intending immigrant." Legal Opinion 97-5, *The Effect of An Intent To Immigrate Permanently On An Alien's Inadmissibility As A Nonimmigrant*, DOJ INS General Counsel's Office, 1997 WL 33169235 (Apr. 8, 1997) at *2 (citing 8 8 U.S.C. § 1184(b)). An H1-B visa, in contrast with a green card, is a temporary visa. *Funygin v. Yukos Oil Co.*, 2005 WL 1840147, at *1 (S.D. Tex. July 28, 2005). So H1-B visa holders are not even considered residents of the state they live in for diversity purposes. *Id.*

**B.   Texas law prohibits F-1 visa holders from being considered domiciled in Texas.**

Of course, what a domicile is under Texas state law may be different than federal law determinations that Wang and Li have no intent to remain in the United States after the conclusion of their visa. But it turns out Texas law is the same. This can be seen by another way Texas law uses domiciliary status: to determine whether individuals are eligible for in-state tuition at public universities. Under Texas law, in-state tuition is available to anyone who established a domicile one year prior to enrollment and continued to maintain it. Tex.

3

Educ. Code § 54.052(a)(1). In a pair of legal opinions from the Texas Attorney General's office, nonimmigrants cannot establish a domicile and therefore residency for tuition purposes. "[A]ll classes of nonimmigrant aliens would be precluded under the Texas statute from establishing Texas residency." Tex. Atty Gen. Op. JM-241, 1984 WL 182307 (1984); *see also* Tex. Atty. Gen. Op. JM-309, 1985 WL 189741 (1985).

Notwithstanding this interpretation of Texas law, *Toll v. Moreno*, 458 U.S. 1, 17 (1982), held that "the Federal Government" had "permitted" G-4 visa holders "to establish domicile" and therefore prohibits a State from "imposing discriminatory tuition charges and fees solely on account of" their "immigration classification." Opinion JM-241 held that the logic of *Toll* applies to other visas, such as NATO visas. Opinion JM-309, in contrast, expressly held that *Toll* does not extend so far as to F-1 visas.

And, to this day, that is how Texas public universities operate. The University of Texas and the University of North Texas, for instance, both keep a list of immigrant statuses that "are eligible to establish a domicile (permanent place of residence) in the State of Texas."[2] H-1B visas are eligible per these lists—it's not clear why, as *Toll* was dependent on treaties and "explicit decision[s] by Congress" not "to bar G-4 aliens from acquiring domicile," 458 U.S. at 14—but F-1 visas are not.[3]

So, when the Attorney General claims, for instance, that because Wang "is pursuing a Master of Divinity with an F1 student visa" in Fort Worth, that makes Fort Worth "unquestionably his domicile," MTD at 5, this assertion is contrary to Texas law. Indeed, it would not operate like that even for U.S. citizens, because one cannot use one's post-

---

[2] *See, e.g.,* https://registrar.utexas.edu/residency/immigration; *see also* https://registrar.unt.edu/sites/default/files/eligible-visas.pdf.
[3] *Id.*

4

enrollment residency to obtain a domicile in Texas. Tex. Educ. Code § 54.052(a)(1). A UT-Austin student can come from Michigan and spend four years pursuing a bachelor's degree, then another two pursuing a master's degree, another five years pursuing a joint MD/JD, and then five more pursuing a Ph.D, but throughout those 16 years that person would still be paying out-of-state tuition and ineligible for the homestead tax exemption. And that is true regardless of whether that student hopes to work locally after graduation. *Compare with* Wang Decl. ¶ 6 (Wang hopes to work with a local church when he ultimately graduates).

In sum, neither Plaintiff is currently eligible to even consider themselves domiciled in Texas at this time.

### C.   Li's future H-1B status will not make her domiciled in Texas.

Li, unlike Wang, will likely be transferring to an H-1B visa in October. *See* Li Decl. ¶ 6. But that does not change the equation. *Toll*, as interpreted by Texas today, means that an H-1B visaholder is not per se ineligible to establish a domicile. But *Toll* does not compel a finding of a United States domicile, either. *See* Opinion JM-309, 1985 WL 189741, at *1 (alien protected by *Toll* must still "show that they meet the standards for resident status required of citizens"). Even for those eligible to establish domicile, like H-1B visaholders, Texas institutions look to a history of employment and other forms of setting concrete roots in Texas to determine domicile.[4] And Li simply does not have that history. She only just graduated from Texas A&M and began work. Li Decl. ¶¶ 5-8. Meanwhile, even Li's subjective interest in remaining in Texas at this time (ironically, in large part due to the discrimination of laws like SB 17) is ambivalent. *See* Li Decl. ¶ 12 ("I think this law is essentially forcing me to leave Texas.").

---

[4] *See, e.g.,* https://registrar.unt.edu/transcripts-and-records/residency-information.

At minimum, she cannot run afoul of SB 17 without not only facing the fear of discrimination by landlords who may discriminate against Chinese people for fear of lease cancellations, but risking civil enforcement from the Attorney General and prosecution from local prosecutors should they decide that her subjective intent on what is, at best, a vague test does not qualify her for domiciliary status. *Id.* at ¶ 9. And while *Toll* may prohibit Texas from excluding her as a matter of law from being deemed a domiciliary come October, it would not prohibit a prosecutor from using the presumption of being a nonimmigrant against her as evidence that she has no intent to remain.

That risk is enough. It is not necessary for Li to show that she definitively will violate the law with her intended conduct. Instead, it is sufficient to show that her intended conduct is "arguably proscribed" by the law and there is a "substantial" threat of enforcement. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), *as revised* (Oct. 30, 2020). As a nonimmigrant visa holder who will have only just gotten her H1-B visa and only recently started a job in Texas, Li will continue to meet this test once she gets her H-1B visa. A Chinese citizen on a nonimmigrant visa who rents property for a year or more or buys land not covered by the homestead exception would certainly be at risk of prosecution even if they subjectively lacked any real desire to have their visa expire and go back to China.

And, of course, it is not yet October. So, any argument based on HB-1 visa is premature in any event.

D. **The Attorney General's attempt to equate domiciled and residing is contrary to SB 17 itself.**

The Attorney General seems to suggest that domiciled just means residing. They suggest because Li and Wang have lived and currently live in Texas, they must be domiciled here. They even go so far as to borrow from the definition of residency in Election Law. MTD

6

at 4. Of course, immigration law poses even a broader hurdle there – noncitizens cannot vote in Texas elections. Tex. Elec. Code § 11.002(a)(2).

There is a bigger problem with the Attorney General's attempt to equate residency and domiciliary. Under SB 17's plain text, those residing (and lawfully present) in the United States are still subject the law. The prohibition on those domiciled in China under the law carries a partial carveout allowing "an individual who is lawfully present and residing in the United States at the time the individual purchases or acquires the interest may purchase an interest" in a "residential homestead." Tex Prop. Code § 5.253(4).[5] Li and Wang meet this carveout. But that does not mean (and cannot mean, canon-of-statutory-interpretation-wise) that they are domiciled in the United States. Yet the Attorney General makes no attempt to explain what the difference between domicile and residency means to him.

The Attorney General's reliance on *Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996), defining the term "reside" under the Constitution, *id.* at 248, cannot overcome this problem. In any event, *Coury* (like *Funygin*), is interpreting the Constitution, and therefore does not provide a definition of domicile under Texas law. *Id.* at 247-48. Further, *Coury* states that "only the American nationality of a dual national is recognized," indicating that the case was not designed to apply to non-U.S. citizens anyway. *Id.*

---

[5] By definition, since a homestead must be "occupied as the individual's principal residence by an owner, by an owner's surviving spouse who has a life estate in the property, or, for property owned through a beneficial interest in a qualifying trust, by a trustor or beneficiary of the trust who qualifies for the exemption," Tex. Tax Code § 11.13(j)(1)(D), a renter does not "acquire an interest" in a homestead.

### E. Any implied promise not to enforce against Plaintiffs does not moot this case.

The Attorney General has not specifically argued that its claims that Plaintiffs are not covered by SB 17 itself establishes that Plaintiffs do not have standing due to no risk of enforcement. Nor would such any argument have merit.

First, because any implied representation that it would not enforce against Plaintiffs occurred after the filing of this lawsuit, such a claim should be analyzed under mootness, not standing. *See Friends of the Earth v. Laidlaw,* 528 U.S. 167, 189-190 (2000). Under mootness, even if these assertions made by the Attorney General were express and made in declarations, that would not be enough to meet its "formidable burden" under *Fikre v. FBI*, 601 U.S. 234, 241 (2024). Even if the implied disclaimer is analyzed under standing, such disclaimer of prosecution of plaintiffs' conduct is not "compelling" evidence sufficient to overcome the assumption of a "credible threat of prosecution." *Turtle Island Foods, S.P.C. v. Strain,* 65 F.4th 211, 218 (5th Cir. 2023) (quoting *Speech First*, 979 F.3d at 335-36).

Second, even if the Attorney General's assertions somehow rendered the claims against the named Plaintiffs moot, the claims against the rest of the class would relate back and not be moot under the Fifth Circuit's relation back doctrine in *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1048 (5th Cir. 1981). *See also Mabary v. Hometown Bank, N.A.,* 276 F.R.D. 196, 202 (S.D. Tex. 2011) (explaining doctrine).

Finally, even if Plaintiffs did not have a reasonable fear of enforcement from this Attorney General, they would still risk enforcement from a future Attorney General. And they would also continue to face a risk of prosecution from local District Attorneys, who have independent prosecutorial power under the law.

8

## II.   SB 17 is preempted by federal law.

Other than citing generally to *Shen* and making a few remarks, the Attorney General does not spend much effort attempting to explain why SB 17 is not preempted. But, one comment he does make shows a misunderstanding of how preemption law works.

The Attorney General argues that "[both statutes [FIRRMA and SB 17] can be given effect without any conflict between them." MTD at 7. But as Plaintiffs explained, that isn't enough to avoid a conflict. Instead, conflict exists when they create contrary sets of schemes for regulating the same conduct. Dkt. 4 at 11 (citing *United States v. Texas*, 97 F.4th 268, 289-90 (5th Cir. 2024), and *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 379-80 (2000). Otherwise, laws criminalizing conduct such as SB 17 could never conflict with a regulatory scheme absent express or field preemption. But if that were the law, surely the Attorney General would cite some support for it. And such a rule would conflict with *Crosby* and *Texas* in any event.

The Attorney General separately claims that the purpose of SB 17 is for Texas "to ensure the domestic security of its residents," MTD at 7, but that isn't right either. SB 17 expressly is about "national security," not the security of Texans. Tex. Prop. Code § 5.254(1), *see also generally* SB 17 § 1(a).

Finally, the Attorney General's arguments about why SB 17 is not preempted by the FHA simply ignore Plaintiffs' argument. Plaintiffs are not claiming that citizenship is a protected class. Nor does SB 17 discriminate on the basis of citizenship status, as Swedes, for example, remain unaffected by the law. Instead, as Plaintiffs explain, SB 17 forces discrimination on the basis of, among other things, national origin. Dkt. 4 at 12. Nowhere does the FHA only prohibit discrimination based on national origin against U.S. citizens,

9

only. And other than simply asserting it, the Attorney General does not provide any argument as to how SB 17 does not constitute national origin discrimination.

### III.    SB 17 violates Equal Protection law.

The Attorney General's argument that SB 17 does not violate the Equal Protection Clause exclusively relies on *Shen* and makes no attempt to counter anything said in Plaintiffs' Preliminary Injunction.

### IV.    The Court should provisionally certify the class.

The only argument that the Attorney General provides in arguing against class certification is that the named Plaintiffs are not covered by the law, which is already addressed above. The Attorney General cannot otherwise complain about the scope of the class because the scope has been defined based on how SB 17 itself treats individuals. Any claim that the class definitions are impossibly vague is simply an admission that SB 17 is impossibly (and unconstitutionally) vague.

In any event, if the Court deems that only one of Wang or Li has standing, Plaintiffs respectfully request the Court certify a class with that Plaintiff as the sole class representative

August 4, 2025                               Respectfully submitted,

                                             s/ Justin Sadowsky
                                             Justin Sadowsky (SDTex 3713277, VA Bar 73382)
                                             *Attorney in charge*
                                             CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
                                             4250 N. Fairfax Drive #600
                                             Arlington, VA 22203
                                             646-785-9154 (no fax number)
                                             justins@caldausa.org


                                             Keliang (Clay) Zhu* (CA Bar No 178170)
                                             Andre Y. Bates* (CA Bar No 305509)
                                             CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
                                             7901 Stoneridge Drive #208
                                             Pleasanton, CA 94588
                                             925-399-6702 (no fax number)
                                             czhu@dehengsv.com
                                             aybates@dehengsv.com


                                             *Motion for admission pro hac vice pending