United States District Court
Southern District of Texas
**ENTERED**
August 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENG WANG & QUINLIN LI, | § § | CIVIL ACTION No 4:25-cv-03103 |
| Plaintiffs, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| KEN PAXTON, *Attorney General of Texas*, | § § § | |
| Defendant. | § | |

OPINION AND ORDER
GRANTING MOTION TO DISMISS

The Texas Legislature recently enacted a law that the parties refer to as *SB 17*. Generally stated, it regulates acquisition of interests in real estate in Texas by entities, organizations, and individuals aligned with designated countries (presently including China, Russia, Iran, and North Korea), including certain specific prohibitions.

It is determined below that the provisions of SB 17 challenged in this action by Plaintiffs Peng Wang and Qinlin Li don't apply to them or to anyone similarly situated to them. The Attorney General has specifically confirmed and conceded as much. And as such, Plaintiffs haven't and won't sustain any injury upon eventual enforcement of this new law. Subject-matter jurisdiction in the federal courts is thus lacking.

The motion by Defendant Ken Paxton, in his capacity as Texas Attorney General, to dismiss this action for lack of standing is granted. Dkt 17.

The included request by the Attorney General for dismissal for failure to state a claim is denied as moot. Dkt 17. Also denied as moot are the motions by Plaintiffs

seeking provisional class certification and a preliminary injunction against enforcement of SB 17. Dkts 3 & 4.

    1.   Background

        a.   Senate Bill 17, 89th Texas Legislature

The Governor of Texas signed SB 17 into law on June 20, 2025. When enacting this law, the Texas Legislature made the following findings in §1 as to the nation of China:

> (a) The legislature finds the following as informed by the determination of the United States Director of National Intelligence in the 2025 Annual Threat Assessment of the U.S. Intelligence Community issued pursuant to Section 108B, National Security Act of 1947 (50 U.S.C. Section 3043b):

> (1) with respect to China:

>> (A) China's dominance in the mining and processing of critical materials is a particular threat, providing it with the ability to restrict quantities and affect global prices. Beijing has shown a willingness to restrict global access to its mineral resources;

>> (B) China is using an aggressive whole-of-government approach, combined with state direction of the private sector, to become a global science and technology superpower. It wishes to surpass the United States and achieve further economic, political, and military gain;

>> (C) China is accelerating its progress by using illicit means;

>> (D) China has stolen hundreds of gigabytes of intellectual property from companies across the world, including from the United States;

2

(E) China is heavily investing in collecting health and genetic data;

(F) China poses health risks to the world;

(G) Beijing will continue to expand its coercive, subversive, and malignant influence activities to weaken the United States. It seeks to suppress critical views of China within the United States; and

(H) China has increased its capabilities to conduct covert influence operations and disseminate disinformation;

Related findings are also made as to the nations of Russia, Iran, and North Korea. See §1(a)(2), (3), (4); see also §4 (providing means by which Governor may add to or remove from current list of designated countries, pursuant to newly enacted §5.254 of Texas Property Code).

Given these findings, the Texas Legislature then found it "necessary to exercise the police power of this state as provided in this legislation." §1(b). Among other things, §4 amends Chapter 5 of the Texas Property Code, with amendment of Subchapter H enacting certain restrictions on the purchase or acquisition of real property by certain foreign individuals or entities related to these four countries. Summarized next are the various provisions of SB 17 that encapsulate the main points in dispute between the parties, with citation being to the new provisions of the Texas Property Code.

Generally stated, §5.253 proscribes the purchase or acquisition of real estate by (i) a governmental entity of a designated country, such as China and the others listed above, (ii) a company or organization that is headquartered in a designated country, or directly or indirectly held or controlled by the government of such a country, or later designated by the Governor for inclusion, and (iii) a company or organization that is in turn owned or controlled

by a company or organization as just described. §5.253(1),
(2), (3).

Specifically at issue here is a further proscription as to
certain individuals that can be considered as originating in
some way from a designated country. Stated in full, and
with emphasis added on the particular subsection
potentially applicable to Plaintiffs in this action, §5.253(4)
states:

> Notwithstanding any other law, the
> following may not purchase or otherwise
> acquire an interest in real property in this
> state:
>
> …
>
> (4) an individual who:
>
>> *(A) is domiciled in a designated
>> country, except that an individual
>> who is lawfully present and residing
>> in the United States at the time the
>> individual purchases or acquires the
>> interest may purchase or acquire an
>> interest in a residential property that
>> is intended for use as an individual's
>> residence homestead, as defined by
>> Section 11.13(j), Tax Code;*
>>
>> (B) is a citizen of a designated
>> country who is domiciled outside of
>> the United States in a country:
>>
>>> (i) other than a designated
>>> country; and
>>>
>>> (ii) for which the individual has
>>> not completed the naturalization
>>> process for becoming a citizen of
>>> that country;
>>
>> (C) is a citizen of a designated
>> country who is unlawfully present in
>> the United States;
>>
>> (D) is:
>>
>>> (i) a citizen of a country other than
>>> the United States; and

4

(ii) acting as an agent or on behalf of a designated country; or

(E) is a member of the ruling political party or any subdivision of the ruling political party in a designated country.

The reference in §5.253(4)(A) to the term "domiciled" is defined elsewhere in SB 17 to mean "having established a place as an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." §5.251(4). The parties confirmed at hearing that, while similar to definitions of "domicile" or "domiciled" found elsewhere under various Texas laws, the definition stated in SB 17 is unique. Dkt 36 at 7–8 (transcript, position of Attorney General).

In addition to the carve-out indicated in §5.253(4)(A) itself, other exceptions to applicability are stated in §5.252, as follows:

This subchapter does not apply to:

(1) an individual who is a citizen or lawful permanent resident of the United States;

(2) a company or organization that is owned by or under the control of:

(A) one or more individuals described by Subdivision (1); and

(B) no individual described by Section 5.253; or

(3) a leasehold interest in land or improvements constructed on a leasehold if the duration of the interest is less than one year.

Other newly enacted provisions direct the Attorney General to "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation of this subchapter is warranted." §5.255(a); see also SB 17 §5 (directing Attorney General to adopt such procedures "[a]s soon as practicable after the effective date of this Act").

Related subsections then direct him to follow such procedures and (i) investigate any purchase or acquisition of real estate that is suspect under SB 17, and (ii) upon any determination that a violation has occurred, either personally bring an *in rem* action against the property or "refer the matter to the appropriate local, state, or federal law enforcement agency." §5.255(b), (c). SB 17 also accords investigative powers to the Attorney General in this respect. §5.256.

Consequential provisions then detail the potential for divestiture and appointment of a receiver in an action instituted by the Attorney General. §5.257. There's also the potential for a civil penalty to be imposed against "a company or entity" as keyed to the market value of the property or interest acquired. §§5.257 & 5.258. And there's the potential for criminal sanction against individuals under §5.258, which states:

> (a) A person commits an offense if the person:
>
>> (1) is an individual described by Section 5.253(4);
>
> and
>
>> (2) intentionally or knowingly purchases or otherwise acquires an interest in real property in this state in violation of this subchapter.
>
> (b) An offense under Subsection (a) is a state jail felony.

The provisions of SB 17 "apply only to the purchase or acquisition of an interest in real property on or after the effective date of this Act." §6. The effective date itself is September 1, 2025. §8.

Last, §7 of SB 17 provides a severability provision that saves unrelated provisions in the event that others are struck down for whatever reason. It includes the following statement:

> If a court finds invalid, for any reason, a prohibition under this Act on the purchase or acquisition of an interest in real property

6

> in this state by an individual described by
> Section 5.253(4), Property Code, as added
> by this Act, the court shall, notwith-
> standing the finding, construe this Act to
> prohibit the purchase or acquisition of an
> interest in real property in this state by an
> individual who is a citizen of a country
> other than the United States and is
> domiciled in a designated country
> described by Section 5.251(3), Property
> Code, as added by this Act.

The parties at hearing hadn't yet focused on this provision. For example, see Dkt 36 at 39:16–40:9 (transcript, as to Attorney General). And so, they hadn't considered any implications that it might have with respect to the pending motions.

### b.  This action

This action commenced on July 3, 2025. Dkt 1. The complaint challenges SB 17 in full, asserting that it "imposes discriminatory prohibitions on the ownership and purchase of real property based on race, ethnicity, and national origin, including prohibitions applied to Chinese citizens." Id at ¶1. And it alleges in concise summary:

> The Named Plaintiffs—three individual
> Chinese citizens who reside in Texas—are
> subject to the law's restrictions and its
> broad effects. They will be unable to rent
> (and therefore continue to live, study, and
> work) in Texas, and unable to purchase
> second homes or investment properties.
> The law stigmatizes them and their
> communities, and casts a cloud of suspicion
> over anyone of Chinese descent who seeks
> to buy property in Texas.

Ibid.

The complaint asserts three counts:

> o  *Count One at ¶¶82–96:* Violation of the
> Supremacy Clause, upon assertion that SB 17
> is preempted by various provisions of federal

> law governing foreign affairs, foreign
> investment, and national security.

- o *Count Two at ¶¶97–110:* Violation of the Equal
  Protection Clause, upon assertion that SB 17
  wrongfully discriminates upon the basis of
  race, ethnicity, color, or national origin,
  including as to Plaintiffs.

- o *Count Three at ¶¶111–23:* Additional violation
  of the Supremacy Clause, upon assertion that
  SB 17 is preempted by provisions of the Fair
  Housing Act.

As relief, the complaint seeks a declaration that SB 17
is preempted by federal law and/or unconstitutional under
the guarantee of equal protection under the Fourteenth
Amendment. Id at 27. Also sought is an unbounded
injunction, both preliminary and permanent, against
enforcement of SB 17 in its entirety. Id at 27–28.

The complaint elsewhere seeks certification of a class
and two subclasses. Dkt 1 at ¶68–81. These are specified
as follows:

- o *The SB 17 class at ¶69(a):* "All people and
  entities who are covered by the law, that is, all
  citizens, members of ruling political parties, and
  agents of China, Iran, Russia, and North Korea
  (plus or minus, over time, any country added or
  removed from the list of designated countries),
  who are not United States citizens or lawful
  permanent residents, as well as all company or
  organization majority-owned or under the
  control of a person covered by the law,
  headquartered in a covered country, or 'directly
  or indirectly controlled' by a covered government
  (represented by all Named Plaintiffs)."

- o *The Chinese subclass at ¶69(b):* "All individuals
  and entities under the purported primary class
  who are covered by SB 17 because they are
  Chinese (represented by all Named Plaintiffs)."

- o *The lawfully present, non-permanent resident
  subclass at ¶69(b):* "All individuals and entities

who are covered by the law because they (or, for corporate entities, their owners) are citizens of a designated country and are not United States citizens or lawful permanent residents (and therefore not domiciled in the United States) (represented by all Named Plaintiffs)."

Plaintiffs each submitted a declaration in this action in support of their motion for preliminary injunction. The legal conclusions stated as purported facts within those declarations are properly disregarded. But the pertinent factual points are as follows:

- o *Plaintiff Peng Wang* avers that he is a Chinese citizen lawfully present in the United States on an F-1 visa, and that he has lived in Texas for more than ten years. He is currently pursuing a Master of Divinity at a seminary school in the Fort Worth area, has his church and social network there, and plans to be a worship pastor at a local church. He is currently a renter, with his current lease expiring in December. He asserts that most area apartments require a lease of one year or longer, and that renting for less than a year would be too expensive and cause too much uncertainty if he has to move frequently due to short-term rentals. Dkt 4-1 at ¶¶1, 5–10 (declaration); see also Dkt 4 at 5–6.

- o *Plaintiff Quinlin Li* avers that she is a Chinese citizen lawfully present in the United States on an F-1 visa, though that visa will likely change to an H-1B visa in around October of this year, as she's now a recent graduate of the University of Texas A&M with a Master of Science degree in environmental engineering. She lives in Austin and works as a water/wastewater treatment plant design engineer for a private company. She is currently renting, with her current lease having just expired on August 15th. She notes intention at the time of her declaration to rent again prior to the September 1st effective date

9

of SB 17. She also states that she prefers a one-year lease, as short-term rentals in the area are inconvenient, more expensive, and of poorer quality. And she states that she would ultimately like to purchase a home because property ownership is the only way to ensure that homes are well maintained. And because her career will require her to spend time in multiple cities, she purportedly would like to buy a home in more than one location. See Dkt 4-2 at ¶¶1, 5–6, 8–11, 13–14 (declaration); see also Dkt 4 at 6.

- *Plaintiff Yisi Wang* avers that she is a Chinese citizen lawfully present in the United States on an H1-B visa, and that she has lived in this country for nearly sixteen years and in Texas for over seven years. She is an actuary at an insurance company, having obtained a graduate degree from the University of Texas at Austin and then built her family and career in Texas. She has submitted a Form I-485 for adjustment of status to a lawful permanent resident (green-card holder) for her and her family, but they haven't yet reached their priority date for processing. She owns a home in Sugar Land but would like to purchase additional property in Texas as investment property. She has worked with an agent to look for appropriate purchases and has submitted for a loan preapproval with a loan broker. Dkt 4-3 at ¶¶1, 5–9 (declaration); see also Dkt 4 at 7.

With their initial filing, Plaintiffs provisionally moved for class certification of the above-stated class and subclasses. Dkt 3. They also moved for a preliminary injunction. Dkt 4. The motion doesn't specify the terms of any requested injunction, and no proposed order was submitted. But in general terms, the conclusion requests a finding that SB 17 is preempted and/or unconstitutional and to "strike it down [in] its entirety." Id at 20. It also

makes specific request that SB 17 be struck down "as it relates to China," and that such relief "extend to the putative class and subclasses." Ibid.

The Attorney General responded to these motions on July 30, 2025, essentially stating reasons why this action should be dismissed. See Dkts 18 (as to preliminary injunction) & 19 (as to class certification). That same day, he also brought a related motion to dismiss on two grounds. Dkt 17. As to subject-matter jurisdiction, he asserts lack of standing, flatly stating, "None of the three plaintiffs are governed by the provisions of SB 17." Id at 3. As to the merits, he asserts failure to state a claim, contending that SB 17 is neither preempted by federal law nor a violation of Plaintiffs' right to equal protection:

> SB 17 is well within the state's traditional sovereign authority to regulate the acquisition of its own land, and the state has done so in clear terms not based on race or national origin. SB 17 mitigates the influence of hostile foreign governments. The statute draws lines on that basis, not based on race or national origin. Nothing the federal government has done—including through the limited regulatory authority and scarce resources afforded to the Committee on Foreign Investment in the United States (CFIUS)—precludes Texas from exercising core sovereign authority over its own land.

Id at 2.

As just noted, the Attorney General made clear in his dismissal motion that each Plaintiff is legally present in Texas under valid visas issued by the United States, and that he reads SB 17 as not applying to them or to anyone in like circumstances. For example, see Dkt 17 at 3–6. In response to Plaintiffs' motion for provisional class certification, he also crisply articulated his rationale:

> There is no state interest in preventing persons who are legally living in Texas as their true home and who possess the desire

> to continue living and working in Texas in
> the future from purchasing or leasing real
> estate. These persons are no threat to the
> security of Texas or Texans. They are
> welcome to settle here. Nothing in SB 17 is
> to the contrary.

Dkt 19 at 4.

In response, on August 1, 2025, two days after the
Attorney General's filings, Plaintiff Yisi Wang voluntarily
dismissed herself from this action. Dkt 20. At a subsequent
status conference, Plaintiffs' counsel confirmed upon
inquiry that Yisi Wang believed that "the briefing . . .
established that she faced no threat of prosecution under
the challenged law." Dkt 24 at 1. But Plaintiffs' counsel
stated further that "the remaining Plaintiffs believe
themselves to be differently situated." Dkt 24 at 1; see also
Dkt 36 at 26:13–22.

Hearing on the motions took place on August 14, 2025.
See Dkt 36 (transcript). Addressed there were the specific
concessions made by the Attorney General in his briefing
about the applicability of SB 17. Upon inquiry, he flatly
confirmed that SB 17 "does not" and "cannot be applied" to
Plaintiffs. Dkt 36 at 9:5–8. He likewise confirmed that it
does not and cannot be applied to anyone "similarly
situated on these facts." Id at 9:11–15. He also articulated
this rationale:

> And so it makes sense that people who are
> here, even on a temporary visa, but they
> want to stay here and they intend to pursue
> every means possible to stay here in the
> future, that—that they would not be
> affected by this law.

Id at 10:5–8.

Toward conclusion of hearing, the undersigned
reiterated and confirmed the Attorney General's position
that SB 17 "will not be applied to the two Plaintiffs in this
case," and that it also wouldn't be applied against "anyone
else who is here from—who is here legally under a visa
from China, or Russia, Iran, or North Korea, if they're here

legally on a visa of whatever sort." Id at 41:1–10. And it was further confirmed that this applied not only to any place of primary residence, but also as to any "investment properties." Id at 41:23–42:3. It was also confirmed with Plaintiffs' counsel at hearing that he understood that "the Attorney General is committing that it's [SB 17] not going to be enforced against your clients or anyone similarly situated." Id at 45:24–46:1; see also id at 48:23–49:3.

2.  Legal standard

Determination below is solely with respect to subject-matter jurisdiction and, in particular, standing. As such, standards needn't be stated as to Plaintiffs' pending motions for provisional class certification and for preliminary injunction.

Subject-matter jurisdiction is inherently a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379, 382 (1884). This is because federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001). A decision to hear a case that's beyond the subject-matter jurisdiction of a federal court isn't a "mere technical violation," but is instead "an unconstitutional usurpation" of power. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §3522 (West 3d ed April 2022 update).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject-matter jurisdiction. Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association, Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted). The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that it is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008). Indeed, a presumption against subject-matter jurisdiction exists that "must be

13

rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Determination that subject-matter jurisdiction is lacking may be based on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Institute for Free Speech v Johnson*, 2025 WL 2104354, at *3 (5th Cir) (citation omitted); see also *Paterson v Weinberger*, 644 F2d 521, 523 (5th Cir 1981); *Lee v Verizon Communications Inc*, 837 F3d 523, 533 (5th Cir 2016).

### 3. Analysis

Noted above is Plaintiffs' specification of the class and subclasses that they seek to represent in this action. And by such representation they seek to strike down SB 17 in its entirety.

This brings into sharp relief the question of standing and, more particularly, whether SB 17 by its terms applies to Plaintiffs at all—much less in ways that encompass each of the varied and different proscriptions enacted under SB 17. It likewise bears emphasis that SB 17 hasn't yet come into effect, nor has it been applied against anyone, including Plaintiffs. Instead, Plaintiffs bring this action as a pre-enforcement challenge.

The specific burden upon a plaintiff on a jurisdictional challenge to Article III standing is to show that he or she has suffered an injury in fact, the injury is fairly traceable to the challenged conduct, and the injury will likely be redressed by a favorable decision. *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992); *Spokeo Inc v Robins*, 578 US 330, 338 (2016). As to the requirement of *injury in fact*, "standing requires a claim of injury that is 'concrete, particularized, and actual or imminent.' That means a claimed injury must be real—'it must actually exist.' And it must not be 'too speculative for Article III purposes.'" *Earl v Boeing Co*, 53 F4th 897, 901–02 (5th Cir 2022) (citations omitted).

The Fifth Circuit recently reiterated the factors pertinent to examination of *injury in fact* in the context of

a pre-enforcement challenge. See *Institute for Free Speech v Johnson*, 2025 WL 2104354 (5th Cir). In short, the plaintiff must show that (i) it "has an intention to engage in a course of conduct arguably affected with a constitutional injury," (ii) "its intended future conduct is arguably proscribed by the law in question," and (iii) "the threat of future enforcement of the challenged law is substantial." Id at *3 (cleaned up).

      a.  Intention to engage in conduct of constitutional dimension

The parties agreed at hearing that Plaintiffs plainly intend to engage in conduct affected with the potential for a constitutional injury. See Dkt 36 at 13:1–23 (transcript, as to Attorney General), 15:16–25 (as to Plaintiffs); see also Dkts 17 at 5–6 (Attorney General, summarizing declarations) & Dkt 21 at 2 (Plaintiffs, noting intention to engage in "act of trying to rent or own property in Texas").

This is sufficient, as this action pertains to Plaintiffs' need to obtain housing and their attendant concerns in that regard. Plaintiffs thus meet this factor.

      b.  Arguable proscription by law

The parties are in sharp disagreement as to whether Plaintiffs' intended conduct is "arguably proscribed" by SB 17.

The parties argued at hearing that, if anywhere, Plaintiffs potentially fit only within the limitations on purchase or lease of property in Texas under §5.253(4)(A). See Dkt 36 at 15:12–15, 34:19–35:1 (Plaintiffs, taking up argument as to only such provision), 11:5–14:2 (Attorney General, same); see also Dkts 18 at 2 (Attorney General, referencing only such provision as to argument on standing) & 21 at 2–7 (Plaintiffs, arguing in terms applicable only to such provision). But §5.253(4)(A) textually applies only to individuals "domiciled in a designated country." And it's this that the Attorney General specifically disclaims as factually applicable to Plaintiffs here.

"Domiciled," he observes, is defined in SB 17 to mean "having established a place as an individual's true, fixed,

and permanent home and principal residence to which the individual intends to return whenever absent." Dkt 17 at 3, quoting §5.251(4). Given the lawful, objective presence of Plaintiffs in Texas, the length and duration of their residence here, and their stated intention to remain for so long as they are legally allowed under United States law, the Attorney General argues (or rather, concedes) that they aren't *domiciled* in China. See Dkt 36 at 8:18–9:15, 10:17–11:4. As such, he argues that SB 17 in no way proscribes the conduct intended by Plaintiffs, meaning in turn that none of their intended conduct—whether buying a homestead, leasing a residence for more than a year, or purchasing a residential investment property—has the potential for constitutional injury. See id at 5: "The prohibition in SB 17 against real estate transactions does not apply to them and they have no standing to bring these claims."

This accords with the text of §§5.251(4) & 5.253(4)(A). Plaintiffs in the main respond that their F-1 and H-1B visas are by their nature temporary and require their eventual return to China, unless the United States continues to renew or upgrades their status. Dkt 21 at 2–3. And they argue that such visas alone prevent them from being considered "domiciled" in Texas, including with reference to treatment under Texas law applicable to in-state tuition. Id at 3–5.

But the question isn't whether Plaintiffs are domiciled *in Texas*. Instead, §5.253(4)(A) directs inquiry only to whether they are "domiciled in a designated country." And given the duration of their continual residence in Texas and stated intention to remain here, it simply can't be said that they are presently domiciled in China.

Regardless, the Attorney General also rightly observes that there's no linkage in the definition of "domiciled" as stated at §5.251(4) with either the fact or duration of a particular visa. Dkt 17 at 6. Likewise, the definition also "doesn't reference anything about the legal right to remain in the county" or "the prerequisites for in-state tuition." Dkt 36 at 8:10–17. Instead, what matters is that Plaintiffs have stated their intention to remain in Texas—not

China—for so long as lawfully allowed by the United States. See Dkt 17 at 5–6.

It is thus determined that Plaintiffs aren't "domiciled" in China for purposes of §5.253(4)(A). As such, their future intention to purchase or lease residential property in Texas isn't "arguably proscribed" by SB 17. See *Institute for Free Speech*, 2025 WL 2104354 at *3.

c.   Substantial threat of future enforcement

Even were it determined that §5.253(4)(A) arguably applied to Plaintiffs' situation, it cannot be said that the threat of future enforcement of SB 17 as against them is substantial. Consideration of the Fifth Circuit's decision in *Institute for Free Speech* itself provides a helpful contrast.

Action there addressed a challenge to a Texas law allowing for possible criminal sanction under the Texas Election Code with respect to the provision of *pro bono* legal services to Texas politicians and political committees. 2025 WL 2104354 at *1. The Texas Ethics Commission had issued an advisory opinion indicating that the plaintiff's intended conduct was specifically within the "ambit" of the law. Id at *2. When sued, the Commissioners didn't dispute that conclusion. Id at *5. And in the course of litigation, they had "never disclaimed their intent to enforce" the challenged law as against the plaintiff. Ibid. Indeed, the Fifth Circuit specifically noted that their briefing "likewise declines to give assurances against enforcement." Ibid. As such, it found this factor to apply. Ibid.

The situation here is entirely different. Detailed above are the specific concessions made by the Attorney General with respect to application of SB 17, including as given in response to direct inquiry by the undersigned. In short, without hesitation or equivocation, the Attorney General stated that (i) SB 17 "does not" and "cannot be applied" to Plaintiffs, (ii) it likewise does not and cannot be applied to anyone "similarly situated on these facts," and (iii) this included not only any place of primary residence, but also any "investment properties." Dkt 36 at 9:5–15, 41:23–42:3 (transcript); see also id at 45:24–46:1, 48:23–49:3 (confirming understanding of Plaintiffs' counsel of same).

17

Beyond accord with the best reading of the text as discussed above, such concession also makes sense under other interpretive principles, particularly the presumption of validity. See Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 66–68 (Thomson/West 2012): "An interpretation that validates outweighs one that invalidates." Challenge by Plaintiffs focuses in part on preemption under federal laws pertinent to foreign affairs and foreign investment. See Dkt 1 at ¶¶82–96. A final determination on preemption needn't be reached here. But the Attorney General's position appears to boil down to assertion that, so long as the federal government has itself vetted and legally admitted a citizen of a foreign nation into this country on a visa, that person is accorded the same property rights in Texas as all others legally present in this country. See Dkt 36 at 10:5–8 (transcript). Assertion to the contrary would indeed potentially run into exacting scrutiny as to preemption. And it's appropriate to avoid an interpretation that nullifies a statute when a legitimate interpretation of text can maintain a state law intact. See Scalia & Gardner, *Reading Law* at 66; see also *Decker v Northwest Environmental Defense Center*, 568 US 597, 623 (2013) (Scalia, J, concurring in part), citing *Panama Refining Co v Ryan*, 293 US 388, 439 (1935) (Cardozo, J, dissenting).

Any "threat of future enforcement" also isn't "substantial" for another reason. Before enforcement of SB 17 can proceed against anyone, the Attorney General must "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation of this subchapter is warranted." §5.255(a). This hasn't happened yet. See §5 (directing Attorney General to adopt such procedures "[a]s soon as practicable after the effective date of this Act"). Admittedly, the analysis on such jurisdictional concerns drifts a bit toward consideration of ripeness. See Erwin Chemerinsky, *Federal Jurisdiction* §2.4.1, at 129 (Wolters Kluwer 2021) (recognizing that "in practice there is an obvious overlap between the doctrines of standing and ripeness"). But as to standing, with such

18

procedures yet to be determined and implemented by the Attorney General, it necessarily means that there isn't yet a "substantial threat" of future enforcement under them.

Until then, the Attorney General is entitled to a presumption of good faith that he will comply with his present interpretation of SB 17 and promulgate procedures in line with the concessions made here. See Dkt 36 at 37:8–15 (Attorney General, stating expectation that procedures won't apply to Plaintiffs). As noted by the Fifth Circuit in *Sossamon v Lone Star State of Texas*, "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." 560 F3d 316, 325 (5th Cir 2009). And indeed, one of the original Plaintiffs dismissed herself from this action essentially in accord with this presumption of good faith. See Dkts 20 (Yisi Wang, notice of dismissal) & 24 (minute entry, noting her belief upon the briefing "that she faced no threat of prosecution under the challenged law"). In any event, there is certainly time and place enough for Plaintiffs to bring further action if the Attorney General promulgates procedures contrary to his present representations. Nothing here should be construed to preclude later action on future facts.

Last, Plaintiffs express concern that independent county district attorneys might institute their own investigations and prosecutions under SB 17. Dkt 21 at 8. This, too, isn't in accord with the provisions of law. To the contrary, SB 17 directs the Attorney General not only to promulgate the referenced procedures, but also to then follow them. §5.255(a). In doing so, he must (i) investigate any purchase or acquisition of real estate that is suspect under SB 17, and (ii) upon any determination that a violation has occurred, either personally bring an *in rem* action against the property or "refer the matter to the appropriate local, state, or federal law enforcement agency." §5.255(b), (c). It thus doesn't appear that SB 17 vests independent prosecutorial authority with Texas counties. Instead, any enforcement will arise only from the same procedures yet to be promulgated by the Attorney

General, and even then only after reference by him to another state or local agency. See Dkt 38:12–39:3 (transcript, Attorney General confirming that he is "sole enforcer of this statute" and has "sole enforcement power" in this respect).

\* \* \*

Courts cannot adjudicate hypothetical cases. See *Transunion LLC v. Ramirez*, 594 US 413, 423 (2021). A plaintiff must instead have an actual and concrete injury for it to have standing and thus vest a federal court with jurisdiction. Id at 424. Given the text of SB 17 and the concessions of the Attorney General in line with those provisions, Plaintiffs don't have either a present injury or a substantial threat of future injury. See *Institute for Free Speech*, 2025 WL 2104354 at \*3 (5th Cir) (articulating standards with respect to pre-enforcement challenges). As such, they lack standing, and dismissal under Rule 12(b)(1) is appropriate.

d.    Additional limitations on standing

It's now been determined that Plaintiffs haven't standing to challenge the sole aspect of SB 17 potentially applicable to them. But recall that what they seek by way of preliminary injunction is an order striking down the *entirety* of SB 17. Dkt 4 at 20 (motion); see also Dkt 1 at 27–28 (complaint). Even if the above conclusion as to lack of pre-enforcement injury is determined to be incorrect, Plaintiffs in no way have standing to challenge all prospective applications of SB 17 in this class action.

To the contrary, the severability provision of SB 17 requires an individualized consideration of each provision. It states that every word and provision "is severable from each other." §7. It further provides that if any aspect is found to be invalid as to "an individual described by Section 5.253(4)," SB 17 must nevertheless be construed "to prohibit the purchase or acquisition of an interest in real property in this state by an individual who is a citizen of a country other than the United States and is domiciled in a designated country described by Section 5.251(3)," presently being China, Iran, North Korea, and Russia.

20

As considered above, Plaintiffs are individuals subject, at most, to enforcement under §5.253(4)(A). Said another way, they face no risk *at all* of enforcement with respect to *any* other proscription found in SB 17. They are not "a governmental entity of a designated country." §5.253(1). They are not "a company or organization" headquartered in, controlled by, or majority-owned by individuals domiciled in a designated country. §5.253(2), (3). Even within the particulars of §5.253(4), they are not "a citizen of a designated country who is domiciled outside of the United States." §5.253(4)(B). Nor are they "a citizen of a designated country who is unlawfully present in the United States." §5.253(4)(C). Nor are they "a citizen of a country other than the United States" and "acting as an agent or on behalf of a designated country." §5.253(4)(D). Nor are they "a member of the ruling political party or any subdivision of the ruling political party in a designated country." §5.253(4)(E).

Simply put, their putative interests and representative capacity cannot give them standing across the *entirety* of SB 17 in accord with the law as to the potential for pre-enforcement injury. See *Genesis Healthcare Corp v Symcyzk*, 569 US 66, 73–74 (2013) (holding that motion to certify class becomes moot once claims of named plaintiffs are found nonjusticiable); see also *Ecosystem Investment Partners v Crosby Dredging, LLC*, 729 F Appx 287, 297 (5th Cir 2018) (standing to challenge statute must analyze specific provisions with respect to "particular claims asserted"), quoting *DaimerChrysler Corp v Cuno*, 547 US 332, 352 (2006), in turn quoting *Allen v Wright*, 468 US 737, 752 (1984) (further citations omitted).

### 4. Conclusion

The motion by Defendant Ken Paxton, in his capacity as Texas Attorney General, to dismiss this action for lack of standing is GRANTED. Dkt 17.

Subject-matter jurisdiction is thus lacking over this action. As such, it isn't appropriate to address the merits of any other pending matter. *Spivey v Chitimache Tribe of Louisiana*, 79 F4th 444, 448 (5th Cir 2023): "[W]hen a

district court lacks jurisdiction, it is emphatically powerless to reach the merits."

The related motion by the Attorney General to dismiss this action for failure to state a claim is DENIED AS MOOT. Dkt 17.

The motions by Plaintiffs Peng Wang and Qinlin Li seeking provisional class certification and a preliminary injunction are likewise DENIED AS MOOT. Dkts 3 & 4.

This action is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Signed on August 18, 2025, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge