IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PENG WANG and QINLIN LI,

*Plaintiffs*,

v.

KEN PAXTON, Attorney General of Texas, in his Official Capacity, only.

*Defendant*.

Case No. 4:25-cv-3103

**PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**

Plaintiffs respectfully request this Court issue an injunction pending appeal. *See* Fed. R. App. P. 8(a).

The test for determining whether an injunction should be granted pending appeal is the same four-factor test for determining whether an injunction is appropriate in the first place. *NAACP v. Tindell*, 95 F.4th 212, 215 (5th Cir. 2024). Plaintiffs therefore incorporate their Motion for a Preliminary Injunction into this Motion for an injunction pending appeal.

Because the Court has already rejected that Motion, and because Plaintiffs seek to ask the Fifth Circuit for an injunction pending appeal in time to enjoin SB 17 before its September 1st enactment, *see* Fed. R. App. P. 8(a)(1) (requiring one seeking such relief to first move in

1

the District Court), Plaintiffs respectfully request this Court to rule on this Motion at its earliest possible moment, and without waiting for the Government's response if it is going to deny the Motion for the reasons described in its Order.

Still, Plaintiffs would like to make a few points about the Court's Order.

## I.    The Attorney General made no "concession" about the meaning of SB 17.

The Court relied on "specific concessions made by the Attorney General with respect to application of SB 17." Order at 17. But for there to be a concession, then the Attorney General would have to be bound by it going forward. And courts are not bound by the interpretations of statutes made by the parties even within a litigation, much less in a future case. *Lightbourn v. El Paso*, 118 F.3d 421, 431 n. 11 (5th Cir. 1997).

Indeed, it is nothing new in a pre-enforcement challenge for a defendant to deny that the behavior plaintiffs seek to engage in is not covered by the statute, and yet that assertion rarely carries the day. In *Stenberg v. Carhart,* 530 U.S. 914, 940 (2000), the Supreme Court "warn[ed] against accepting as 'authoritative' an Attorney General's interpretation of state law when 'the Attorney General does not bind the state courts or local law enforcement authorities.'" *Id.* at 940 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 384 (1988). Like in other states, it is the province of the courts, not the Texas Attorney General, to interpret Texas law. *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996); *Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010).

Here, the Attorney General's assertions about SB 17 are not binding on even himself. And while the Attorney General can bind local law enforcement in a sense (i.e., because a local prosecution cannot occur until an Attorney General's civil enforcement, *see* Order at 19-20) the Supreme Court equally warned about the possibility that "future Attorneys General"

2

might use the law to prohibit what the pre-enforcement challenge sought to vindicate. *Stenberg,* 530 U.S. at 945. The Fifth Circuit, too, has found that a law is arguably proscribed notwithstanding an enforcement agency's disclaimer if a "future Commissioner" could plausibly bring an enforcement action. *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 217 (5th Cir. 2023).

There is one Court, of course, who can definitively define SB 17 in a way that precludes enforcement against the Plaintiffs. That is the Texas Supreme Court. Plaintiffs will be filing a Motion to Certify the question of the meaning of SB 17 to the Texas Supreme Court on appeal, and will do so expeditiously. The Texas Supreme Court is currently in recess, but will return in October, and Plaintiffs hope to be able to have the question heard by the Texas Supreme Court shortly thereafter. And if the Texas Supreme Court then rules the same way this Court did, Plaintiffs will accept the win and drop this case. But the only way to preserve the status quo and allow Plaintiffs actual assurances that they can enter into contracts that would be forbidden under SB 17 if it applies to them is to issue an injunction pending appeal.

## II.    Plaintiffs are not domiciled in the United States.

Of course, just because the Attorney General's assertions about what "domicile" means in this case are neither concessions nor controlling, does not mean they are incorrect. But here, the definition of "domicile" is no different than in other uses of the term under Texas law. Indeed, the definition of domicile used in SB 17 is taken directly from half-century-old Texas Supreme Court caselaw. *See Snyder v. Pitts,* 150 Tex. 407, 413 (1951). And so the District Court's distinguishing other parts of Texas law that defines "domicile" in a way that excludes Plaintiffs from claiming a domicile in the United States, *see* Order at 16, ignores that Texas law itself does not make any such distinctions. *See In re Swart*, 581 S.W.3d 844, 850 (Tex.

3

App. 2019) (noting that, consistent with federal law, those in the United States on a temporary visa cannot make the United States, and therefore Texas, their domicile).

The Court also suggests (at 16) that it is irrelevant that Texas law would prohibit Plaintiffs from calling Texas their domicile because they must only establish that they would be domiciled in the United States.[1] But it's not clear why. Plaintiffs would still have to show they were domiciled somewhere in the United States under Texas's law and Texas's long-established tests for domicile. And it would be Plaintiffs who have the burden that their domicile was no longer China, *see Stone v. Phillips,* 171 S.W.2d 156, 159 (Tex. Civ. App. 1943).

### III.   The Court overstates the "arguably proscribed" burden.

Nor is it necessary that Plaintiffs show that they are still domiciled in China. Instead, *Turtle Island* confirms that it is unnecessary for a plaintiff's action to definitively violate the challenged the law. *Id*. Rather, a plaintiff "has standing if its intended action … is ***arguably*** proscribed." 65 F.4th at 217. (emphasis original). Indeed, Plaintiffs need not even show that their "interpretation is even the "best interpretation." *Id.* That is because they may suffer the injury that gives rise to their pre-enforcement challenge (civil or criminal enforcement) simply by the enforcing regime's decision that they have violated the statute, even if that is based on a mistake of law (that is, a reasonable but different interpretation of the statute) or fact (that is, a reasonable dispute over whether their actions did, in fact, fall under the statute). And so just how in *Turtle Island* the Tofurkey producer's concerns that their good faith branding would be seen as "intentionally misbranding" met the "arguably proscribed" standard, so would Plaintiffs' concerns that they would be seen as domiciled outside of China.

---

[1] It is not enough that Plaintiffs-Chinese citizens-would be able to show they were not domiciled in China, as a Chinese citizen domiciled in a country other than the United States is covered by the law. *See* Tex. Prop. Code §§ 5.253(4)(B),

4

And this would be true even under the Court's interpretation of "domicile" that simply requires a subjective intent to remain here. Mr. Wang does, in fact, have a subjective intent to remain here, at least in the immediate time after he finishes his studies *see* Wang Decl. (Dkt. 4-1) at ¶ 8. But since he has no desire to break the law, consistent with the declaration he made to obtain an F-1 visa, he will go home once his visa expires. Ms. Li, also on an F-1 visa (although she will soon be obtaining an H-1B visa), cannot even go that far. Her Declaration talks about a desire to own her own home, but it does not say where. Li Decl. (Dkt. 4-2) at ¶ 13. If she ends up working in the United States, presumably that home would be in the United States, of course. But the only thing Ms. Li says about her long term plans locationwise is that "I think this law is essentially forcing me to leave Texas." *Id.* at ¶ 12. And while the Court may think at first glance, that does not mean she feels like leaving the United States, her future H-1B visa says otherwise. After all, an H-1B visa is tied to a specific employer. 8 C.F.R. § 214.2(h)(1)(i). If her employment ends, an H-1B visaholder has 60 days to leave the country, unless he secures a different visa. 8 C.F.R. § 214.1(l)(2).

Even if the Court and the Attorney General are right, whether Chinese nonimmigrants like Plaintiffs can rent homes in Texas turns on their subjective intent. And not only can that subjective intent be entirely ephemeral, it can be opaque to the Attorney General's office, to Courts, to prosecutors, and to jurors. *See Turtle Island*, 65 F.4th at 217. So Plaintiffs meet the "arguably proscribed" test either way.

*Institute for Free Speech v. Johnson*, 2025 WL 2104354 (5th Cir. July 28, 2025), says nothing to the contrary. On the issue of "arguably proscribed," the Court answered the question summarily as undisputed. *Id.* at *5.

5

**IV.   Plaintiffs are at risk of enforcement regardless of the Attorney General's supposed concessions.**

Once Plaintiffs meet the arguably proscribed prong, they also meet the risk of enforcement prong. This is because when courts "face a pre-enforcement challenge 'to recently enacted (or, at least, non-moribund) statutes … by the class to which the plaintiff belongs, we will assume a credible threat of prosecution in the absence of compelling contrary evidence.'" *Turtle Island*, 65 F.4th at 218 (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020)).[2] And the Attorney General's supposed concessions are simply not compelling enough. *Id.* ("Even the State's disclaimed intent to penalize the nine labels is not compelling."). This is for the same reasoning as above: "[N]othing binds the [Attorney General] here—he (or a future holder of his office) could change his mind and decide [Plaintiffs' actions] do violate the statute." *Id.*

*Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 325 (5th Cir. 2009), does not change this analysis. *Sossamon* referred to the test of voluntary cessation, rather than risk of enforcement. In any event, this part of *Sossamon* has effectively been overturned by *FBI v. Fikre*, 601 U.S. 234, 241-43 (2024), which held that a government's "formidable burden" of showing that its past conduct is not likely to reoccur is no different than a private litigant's burden. *Compare with Sossamon*, 560 F.3d at 325 (explaining that "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity").

---

[2] Although both *Speech First* and *Turtle Island* refer to expressive activity, the same risk-of-enforcement test applies to other constitutional challenges. *Texas v. Yellen*, 105 F.4th 755, 764 (5th Cir. 2024).

It is true that *Institute for Free Speech v. Johnson*, 2025 WL 2104354 (5th Cir. July 28, 2025)—which, unlike here, involved a statute that was not new, and where there was no or limited history of enforcement. *is.* at *6 n.4—says that the failure to unequivocally disclaim a prosecution is insufficient to overcome the presumption of enforcement. But what it did not hold, or even state in dicta, was that an unequivocal disclaimer was sufficient. *Turtle Island*, in contrast, did hold that such disclaimer was insufficient to overcome the presumption of enforcement once the arguably proscribed test was met, for a new statute. 65 F.4th at 218 And even if *IFS* and *Turtle Island* were in conflict here, the rule of orderliness means that *Turtle Island* prevails. *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002).

### V.    The Court's ripeness holding ignores Plaintiffs' right to a pre-enforcement challenge.

Towards the end of its opinion, the Court suggests (at 18-19) that any claim would not be ripe because the Attorney General is obligated to "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation of this subchapter is warranted." Tex. Prop. Code § 5.255; *see also* SB 17 § 5, At oral argument, the Assistant Attorney General, though disclaiming any ability to bind or predict what rules might be promulgated, hypothesized that the rules might foreclose an action against Plaintiffs. Oral Argument Tr. (Dkt. 36) at 35:5-15.

While it is not entirely clear how "procedures to examine a purchase" might somehow protect Plaintiffs from substantively being seen as violating the law, even if it could, this would not render Plaintiffs' claims unripe for two reasons. First, unlike the statute's effective date, *see* SB 17 § 6, these rules will be retroactive. So Plaintiffs (and others arguably covered by SB 17) are still in danger of enforcement of prosecution for any acts they commit as early as September 1. And the purpose of a pre-enforcement challenge is precisely to allow individuals

7

to exercise their constitutional rights without being deterred by the threat of future enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). And second, those rules can be changed, and those changes will still apply retroactively to prior purchases. So even if rules were in place disclaiming prosecution, those rules would still suffer the same flaw that the Attorney General's disclaimers in court suffer from.

## VI. The Attorney General will not suffer any significant harm from an injunction pending appeal limited to the application of Section 5.253(4)(A)-(B).

The Court goes on to suggest (at 20-21) that even if Plaintiffs had standing and were entitled to an injunction of some kind, it would not be entitled to an injunction applying to the whole law. Plaintiffs respectfully disagree: They seek to represent a class of everyone for whom the law applies, and the Attorney General's only challenge to class certification was that Plaintiffs were not covered by the act. But Plaintiffs are willing to accept an injunction pending appeal that would only apply to the part of the law they are covered by, that is Tex. Prop. Code § 5.253(4)(A) (non-U.S. citizens or green card holders domiciled in China and other designated countries), and Tex. Prop. Code § 5.253(4)(B) (Chinese citizens domiciled in countries outside the United States).

Under such a more limited injunction, the law would remain enforceable, for now, against China and other designated countries themselves, Tex. Prop. Code § 5.253(1), their agents and members of the Chinese Communist Party, Tex. Prop. Code §§ 5.253(4)(D)-(E), individuals here unlawfully, Tex. Prop. Code § 5.253(4)(C), and corporations and companies, including those owned by Plaintiffs, Tex. Prop. Code §§ 5.253(2)-(3).

According to the Attorney General at oral argument, the only purpose of the law was "to keep hostile governments and their agents from purchasing real estate in Texas, or leasing real estate." Oral Argument Tr. at 7:23-8:2. So an injunction limited in this way would not

prevent the Attorney General from enforcing the law in a manner consistent with the law's purported purpose.

## CONCLUSION

Plaintiffs respectfully request an injunction pending appeal, at least prohibiting the Attorney General from enforcing Tex. Prop. Code §§ 5.253(4)(A)-(B). Should the Court grant the injunction, Plaintiffs will expeditiously move in the Court of Appeals for certification of the meaning of SB 17 to the Texas Supreme Court, and will immediately dismiss their appeal (and therefore dissolve the injunction) should the Texas Supreme Court agree with this Court's interpretation of domicile or otherwise interpret SB 17 to preclude enforcement against Plaintiffs.

Plaintiffs request a ruling as soon as possible. Assuming the Court remains of the opinion that Plaintiffs are not likely to succeed on their claims, Plaintiffs request the Court immediately issue its decision so it can seek an injunction in the Fifth Circuit prior to the September 1st enactment date. To the extent the Court is persuaded by Plaintiffs' arguments here, it requests the Court order an expedited response from the Attorney General so it can rule as soon as possible, and no later than September 1.

August 19, 2025                                    Respectfully submitted,

                                                   s/ Justin Sadowsky
                                                   Justin Sadowsky (SDTex 3713277, VA Bar 73382)
                                                   *Attorney in charge*
                                                   CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
                                                   4250 N. Fairfax Drive #600
                                                   Arlington, VA 22203
                                                   646-785-9154 (no fax number)
                                                   justins@caldausa.org


                                                   Keliang (Clay) Zhu* (CA Bar No 178170)
                                                   Andre Y. Bates* (CA Bar No 305509)
                                                   CHINESE AMERICAN LEGAL DEFENSE ALLIANCE
                                                   7901 Stoneridge Drive #208
                                                   Pleasanton, CA 94588
                                                   925-399-6702 (no fax number)
                                                   czhu@dehengsv.com
                                                   aybates@dehengsv.com
                                                   * pro hac vice
                                                   *Attorneys for Plaintiffs*